# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSELYN M. MALDONADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-08-CV-0503 NN |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

### Introduction

Plaintiff Joselyn M. Maldonado brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Maldonado is not disabled for the purposes of the Social Security Act (the Act) and denying Maldonado's application for Supplemental Security Insurance (SSI) benefits. Maldonado asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Maldonado asks the district court to reverse the decision and remand the case for further proceedings.

After considering Maldonado's brief in support of her complaint,[1] the brief in support of the Commissioner's decision,[2] Maldonado's reply brief,[3] the record of the SSA proceedings, the

---

[1] Docket entry # 16.

[2] Docket entry # 20.

[3] Docket entry # 21.

pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I affirm the Commissioner's decision.

## Jurisdiction

I have jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3), pursuant to the parties' consent.[4]

## Administrative Proceedings

Based on the record in this case, Maldonado exhausted her administrative remedies prior to filing this action in federal court. Maldonado applied for SSI on September 1, 2004, alleging disability beginning July 1, 2003.[5] Maldonado did not identify a triggering event or condition for this date. The Commissioner denied the application initially and on reconsideration.[6] Maldonado then asked for a hearing before an administrative law judge (ALJ).[7] A hearing was held before an ALJ on September 19, 2006.[8] The ALJ issued an unfavorable decision on January 19, 2007, concluding that Maldonado is not disabled within the meaning of the Act.[9] Maldonado asked for review of the decision on March 21, 2007.[10] The SSA Appeals Council reviewed the ALJ's decision and remanded the case to the ALJ to consider evidence submitted after the

---

[4]*See* 28 U.S.C. § 636(c); docket entry #s 10 & 15.

[5]SSA record, p. 90.

[6]*Id*. at pp. 24-25.

[7]*Id*. at p. 66.

[8]*Id*. at p. 47.

[9]*Id*. at pp. 44-55.

[10]*Id*. at p. 60.

hearing and to complete the record because the tape recording of the hearing was defective. The ALJ conducted a second hearing on August 23, 2007[11] and issued second unfavorable opinion on December 21, 2007.[12] Maldonado asked the Appeals Council to review the decision.[13] The SSA Appeals Council denied the request for review on February 25, 2008, determining that no basis existed for reviewing the ALJ's decision.[14] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). After receiving the court's leave to proceed in forma pauperis, Maldonado filed this action seeking review of the Commissioner's decision on July 14, 2008.[15]

## Issue Presented

> Is the ALJ's decision that Maldonado was not under a "disability,"
> as defined by the Act, supported by substantial evidence and does
> the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[16] "Substantial

---

[11]*Id*. at p. 411.

[12]*Id*. at pp.

[13]*Id*. at p. 404.

[14]*Id*. at p. 4.

[15]Docket entry # 3.

[16]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[18]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[19] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[20] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[21] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[22]

---

[17] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[18] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[19] *Martinez*, 64 F.3d at 173.

[20] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[21] *Martinez*, 64 F.3d at 174.

[22] *Id*.

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[23] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[24] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[25]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[26] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[27]

The first step involves determining whether the claimant is currently engaged in

---

[23] 42 U.S.C. § 1382(a)(1) & (2).

[24] 42 U.S.C. § 1382c(a)(3)(A).

[25] 42 U.S.C. § 1382c(a)(3)(B).

[26] 20 C.F.R. §§ 404.1520 and 416.920.

[27] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

5

substantial gainful activity.[28] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[29] The second step involves determining whether the claimant's impairment is severe.[30] If it is not severe, the claimant is deemed not disabled.[31] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[32] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[33] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[34] If the claimant is still able to do her past work, the claimant is not disabled.[35] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[36] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the

---

[28]20 C.F.R. §§ 404.1520 and 416.920.

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*

sequential analysis.[37] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[38] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[39]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the five-step process. At step one, the ALJ determined that Maldonado had not engaged in substantial gainful activity since September 1, 2004.[40] At step two, the ALJ determined that Maldonado has the following severe impairments: post bilateral menicus repair, mild degenerative disc disease with spondylosis, depression, and carpal tunnel syndrome on the left wrist.[41] The ALJ determined that Maldonado's heart disease, pulmonary disease, hypertension, plantar warts, and hypothyroidism are not severe impairments.[42] At step three, the ALJ determined that Maldonado does not have an impairment or a combination of impairments that meets or medically equals on of the

---

[37]*Leggett*, 67 F.3d at 564.

[38]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[39]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[40]SSA record, p. 13.

[41]*Id*.

[42]*Id*.

7

impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[43] At step four, the ALJ determined that Maldonado has the residual functional capacity to perform a restricted range of light work; specifically, Maldonado can lift/carry no more than 20 pounds occasionally and 10 pounds frequently; stand/walk and sit approximately 6 hours out of an 8-hour day with the following limitations. Maldonado is limited to standing no more than 90 minutes at one time. She is precluded from climbing ladders, ropes and scaffolds and is limited to occasional kneeling, crouching and crawling. Maldonado cannot work around hazards such as open bodies of water, work in areas where there are fumes, or work at heights. She is limited to simple, routine, repetitive, one or two step tasks.[44] The ALJ also determined that Maldonado has no past relevant work. At step five, the ALJ determined that considering Maldonado's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Maldonado can perform and that Maldonado is capable of making a successful adjustment to that work.[45] Thus, the ALJ concluded that Maldonado is not disabled under the Act.[46]

## C. Maldonado's Allegations of Error

Maldonado first challenges the ALJ's step-two analysis. In step two, the ALJ determines whether a claimant's impairments are severe.[47] Maldonado complains that the ALJ did not

---

[43]*Id*. at p. 15.

[44]*Id*. at pp. 16-17.

[45]*Id*. at pp. 21-22.

[46]*Id*. at p. 23.

[47]20 C.F.R. §§ 404.1520 and 416.920.

8

determine that the plantar warts on the bottom of her feet and her hypothyroidism are severe impairments as the ALJ determined in the first unfavorable decision.[48] Maldonado maintains that the ALJ exceeded the scope of the Appeals Council remand order by changing her determination about the plantar warts and hypothyroidism—that is, by determining the impairments are not severe versus severe as in the first unfavorable decision.[49]

On a remand, the SSA regulations permit the ALJ to "take any action that is ordered by the Appeals Council and . . . any additional action that is not inconsistent with the Appeals Council's remand order."[50] The Appeals Council directed the ALJ to:

> Obtain updated evidence concerning the claimant's musculoskeletal impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. . . .
>
> Give further consideration to the claimant's residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . . .
>
> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . . The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and state the incidence of such jobs in the national economy. . . .
>
> [The ALJ] will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

The ALJ complied with these instructions. Because the ALJ complied with the instructions, the ALJ's step-two determination was not inconsistent with this order. "Nor did the [remand] order

---

[48]Docket entry # 16, pp. 10-13.

[49]*Id*. at p. 10.

[50]20 C.F.R. § 416.1477(b).

bind the ALJ to [her] earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate."[51] The ALJ did not exceed the scope of the remand order because she took no action that was inconsistent with the Appeals Council's remand order.

Having addressed the step-two change, the relevant question is whether substantial evidence supports the ALJ's step-two determination about the severity of Maldonado's impairments. The United States Court of Appeals for the Fifth Circuit articulated the test for severity as follows: "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[52] This standard is reflected on page 3 of the ALJ's opinion.[53] One and half single-spaced pages of the ALJ's opinion is devoted to explaining why the ALJ determined that Maldonado's heart disease, hypertension, plantar warts and hypothyroidism do no impose more than minimal limitations on Maldonado's functioning.[54] The ALJ's discussion of the medical

---

[51] *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987). *See Houston v. Sullivan*, 895 F.2d 1012, 1015-16 (5th Cir. 1989) (Once the case was remanded to the ALJ to gather more information about the extent of [the claimant's] disability, the ALJ was free to reevaluate the facts.); *Maldonado v. Barnhart*, No. SA-05-CA-0468 R, 2006 U.S. Dist. LEXIS 60052, 31-32 (W.D. Tex. Aug. 19, 2006) (explaining that preclusion principles do not bind the ALJ to an earlier decision; otherwise, ALJs would be discouraged from reviewing the record on remand, checking initial findings of fact, and making appropriate corrections).

[52] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (alterations in original opinion not reflected).

[53] SSA record, p. 13.

[54] *Id.* at pp. 13-15.

evidence is accurate and the ALJ's interpretations of the evidence is sound. The discussion, however, contains one misstatement. On page 5 of the opinion, the ALJ stated that "[t]he record was held open after the hearing, but no new evidence was submitted to corroborate the claimant's allegations as to [the] conditions [of heart disease, hypertension, plantar warts and hypothyroidism] being severe."[55] In reality, Maldonado submitted the results of an ankle-brachial index report conducted one month prior to Maldonado's second hearing.[56] "The ankle-brachial index test is a quick, non-invasive way to assess [a person's] risk for peripheral artery disease, a condition in which the arteries in your legs and ankles are narrowed."[57] The results of the test conducted prior to the hearing, and submitted to the SSA after the hearing, reported "[n]o evidence of arterial insufficiency." The ALJ's error did not affect Maldonado's substantial rights because the report does not indicate a severe impairment. Maldonado identified an error in the ALJ's opinion, but the error does not warrant reversal because the error did not affect Maldonado's substantial rights.[58]

Finally, Maldonado's suggestion that Dr. Melendez may not have completed the disability claim form after she complained about plantar warts because the doctor wanted to charge for the form[59] is belied by her application to proceed in forma pauperis. In the application, Maldonado

---

[55]*Id*. at p. 15.

[56]*Id*. at 407-10.

[57]Mayo Clinic, Tools for Healthier Lives, Atherosclerosis, Ankle-brachial index, *available at* http://www.mayoclinic.com/health/ankle-brachial-index.

[58]*Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.").

[59]Docket entry # 16, p. 11.

stated that she receives free medical care.[60] Maldonado's argument that the record indicates she sought treatment from a podiatrist[61] is contradicted by her disability reports. Maldonado did not identify a podiatrist as a treating physician,[62] although her primary care doctor provided her with a referral for a podiatrist.[63] Maldonado's complaints about the ALJ's step-two determination provides no basis for relief.

Maldonado also contends the ALJ failed to apply the proper legal standard to evaluate her depression. She maintains the ALJ failed to conduct the analysis required by 20 C.F.R. § 404.1520a and failed to include the limitations caused by her depression in the hypothetical question to the vocational expert.[64]

Under the SSA regulations, the ALJ must evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.[65] The ALJ determined that Maldonado is impaired by depression. If the

---

[60]Docket entry # 1.

[61]Docket entry # 16, p. 12.

[62]SSA record, pp. 94-103 (identifying a primary care doctor, cardiologist, and orthopaedic surgeon), *id*. at pp. 119-25 (identifying a primary care doctor, cardiologist, orthopaedic surgeon, and the general surgeon who performed Maldonado's colonoscopies); *id*. at pp. 133-40 (identifying the same primary care doctor, cardiologist, and orthopaedic surgeon).

[63]*Id*. at p. 224.

[64]Docket entry # 21, p. 4. Maldonado stated this allegation of error differently in her initial brief, erroneously relying on 20 C.F.R. 404.920a. *See* docket entry # 16, pp. 14-15. That provision applies to applications for Disability Insurance Benefits. The provision doesn't apply to Maldonado's claim because she applied for SSI; however, there is no significant difference between the requirements of 20 C.F.R. 404.920a and 20 C.F.R. § 416.920a which applies to SSI claims.

[65]20 C.F.R. §416.920a(b)(1).

ALJ determines the claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment and document the ALJ's finding.[66] The ALJ must rate and record the degree of functional limitation resulting from the impairment based on four areas—activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[67] The ALJ found that Maldonado has a mild restriction in activities of daily living; mild difficulty in social functioning; moderate difficulties with concentration, persistence or pace; and has not experienced an episodes of decompensation.[68] The ALJ explained how the evidence supported her findings. The psychiatric review technique completed by Dr. M. Chappuis indicates the ALJ was generous in rating the degree of functional limitation resulting from Maldonado's depression. Dr. Chappuis opined that Maldonado was not restricted in activities of daily living; had mild difficulties in maintaining social functioning; had mild difficulties in maintaining concentration, persistence or pace; and had not experienced an episode of decompensation.[69]

After rating the degree of functional limitation resulting from a mental impairment, the ALJ must determine the severity of the mental impairment.[70] In this case, the ALJ determined that Maldonado has a severe depressive disorder.[71] If the ALJ determines the claimant's mental

---

[66] 20 C.F.R. §416.920a(b)(1).

[67] 20 C.F.R. §416.920a(c).

[68] SSA record, pp. 15-16.

[69] *Id*. at pp. 186-97.

[70] 20 C.F.R. §416.920a(d).

[71] SSA record, p. 15.

13

impairment is severe, the ALJ must determine whether the impairment meets or is equivalent in severity to a listed mental disorder. The ALJ determined that Maldonado's depression does not meet the applicable listing, section 12.04 (affective disorders).[72]

If the ALJ finds that the claimant's severe mental impairment does not meet or equate in severity to a listing, the ALJ must assess the claimant's residual functional capacity.[73] Although Maldonado maintains the ALJ did not assess her residual functional capacity,[74] the ALJ conducted an assessment. In assessing Maldonado's residual functional capacity, the ALJ determined that Maldonado was limited to simple, routine, repetitive, one or two step tasks because of depression and deficits in concentration, persistence, and pace.[75] The ALJ explained why she questioned Maldonado's credibility in regard to the disabling nature of her depression,[76] determining Maldonado's statements about the intensity, persistence and limiting effects of her symptoms was not entirely consistent or credible.[77] Maldonado's reliance on the one-time assessment by Dr. Russel Thompson that Maldonado had a global-assessment-of-functioning (GAF) of 55 is misplaced. Under the GAF scale, an assessment of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep

---

[72]*Id*.

[73]20 C.F.R. § 416.920a(d).

[74]Docket entry # 16, p. 19.

[75]SSA record, p. 17.

[76]*Id*. at pp. 17 & 21

[77]*Id*. at p. 19.

a job)."[78] Reliance on a one-time GAF assessment is inappropriate where medication therapy improved Maldonado's depression.[79] The foregoing discussion shows the ALJ applied the proper legal standard to evaluate Maldonado's depression.

Turning to Maldonado's complaint about the ALJ's hypothetical question to the vocational expert, a proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[80] The ALJ's assessment of Maldonado's residual functional capacity shows that the ALJ recognized that depression affects Maldonado's ability to work. The ALJ's second hypothetical question to the vocational expert incorporated the limitations recognized in the residual functional assessment. Specifically, the ALJ asked the vocational expert "to take into account some concentration, persistence or pace difficulties, either because of medications or distractions due to pain, . . . limited to one to two step tasks or routine repetitive tasks . . . ."[81] This question reflects a proper hypothetical question because it incorporated the mental limitations recognized by the ALJ. Maldonado's complaint

---

[78]*See* Am. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 27 (4th ed., text revision, 2000) at p. 34.

[79]SSA record, p. 248 (on Apr. 6, 2004, prescribing Zoloft for depression); *id*. at p. 52 (reporting that Maldonado testified on Sept. 19, 2006 that Zoloft has been working fairly well in treating depression); *id*. at p. 426 (testifying on Aug. 27, 2007 that Zoloft has helped her depression).

[80]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

[81]SSA record, p. 456.

about the ALJ's consideration of her depression provides no basis for relief.

Maldonado also maintains the ALJ's hypothetical question was incomplete in regard to limitations resulting from her heart disease, pulmonary disease, hypertension, plantar warts, and hypothyroidism—the impairments the ALJ determined are not severe. Maldonado's argument is flawed because Maldonado relies on evidence she maintains contradicts the ALJ's hypothetical questions[82] and fails to consider the Commissioner's role to resolve conflicts in the evidence and make credibility assessments.[83] The ALJ's hypothetical questions considered limitations supported by substantial evidence—Maldonado's age; her ability to perform a range of light work; her ability to lift/carry 20 pounds occasionally and 10 pounds frequently; her ability to stand/walk 6 hours in 8-hour day with standing limited to 90 minutes at one time; her ability to sit with normal breaks for about 6 hours of an 8-hour day; her inability to climb ladders, ropes and scaffolds; her ability to balance and stoop frequently; her limitation for occasional kneeling, crawling, and crouching; limitations in left shoulder overhead reaching; the need to avoid concentrated exposure to heavy industrial pollutants; and Maldonado's inability to work around hazardous machinery, heights, flames, and open bodies of water.[84] The ALJ included the limitation about ladders, ropes and scaffolds and the avoidance of hazardous machinery, heights, flames and open bodies of water because of Maldonado's experience with aneurysms in her late twenties.[85] The ALJ included the limitations in kneeling, crouching and crawling because of

---

[82]See docket entry # 16, pp. 22-24.

[83]Martinez, 64 F.3d at 174.

[84]See SSA record, p. 454.

[85]Id.

Maldonado's problems with her knees.[86] While the evidence might suggest other limitations, the ALJ's question "is not required to include every physiological impairment suggested by the evidence . . . ,"[87] but instead must "incorporate reasonably all disabilities of the claimant recognized by the ALJ."[88] The ALJ's question in this case incorporated reasonably disabilities of Maldonado recognized by the ALJ. Maldonado's complaints about the ALJ's hypothetical question to the vocational expert provide no basis for reversing the Commissioner's decision.

Finally, Maldonado challenges the ALJ's step-four determination about her residual functional capacity. Maldonado complains that the ALJ failed to explore how the length of the recovery period for her knee surgery might affect her ability to perform a range of light work.[89] She also argues that she is prone to falling and that the ALJ failed to consider how falling affects her ability to work on a regular basis. This argument fails because Maldonado had the burden at step four to prove that problems with her knees precluded her from working. Maldonado characterizes herself as prone to falls,[90] but Maldonado's reports of falling[91] do not indicate that she is prone to falls. Even if Maldonado's reports of occasional falling are true, Maldonado did

---

[86]*Id.*

[87]*Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985). *See Stanley v. Sec'y of Health & Hum. Services*, 39 F.3d 115, 118 (6th Cir. 1994) (explaining that the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals).

[88]*Bowling*, 36 F.3d at 436.

[89]Docket entry # 16, p. 26.

[90]*Id.* at p. 25.

[91]SSA record, pp. 240 (reporting on July 9, 2004 that she fell off a bicycle); *id.* at p. 219 (reporting on April 29, 2005 that her knee hit something when she slipped); (testifying on August 23, 2007 that she fell some time after her Nov. 13, 2006 knee surgery).

not show that falling, or her recovery from knee surgery, prevents her from working. Maldonado reported falling after her November 13, 2006 knee surgery, but her surgeon reported on December 15, 2006 that post-operative weight bearing x-rays were satisfactory.[92] The surgeon's clinical note on March 6, 2007—five months before the second hearing—indicated Maldonado's left knee was inflamed.[93] The surgeon recommended heat. This evidence supports the ALJ's step-two determination that status post bilateral meniscus repair is a severe impairment, but does not contradict the ALJ's step-four determination that Maldonado can perform a range of light work. The ALJ's residual-functional-capacity determination considered limitations resulting from Maldonado's knee surgery. Maldonado's complaints about the ALJ's treatment of her problems with her knees provide no basis for reversing the ALJ's decision.

## Conclusion

The record contains very little in terms of impairments interfering with Maldonado's ability to work. Maldonado's family doctor treats Maldonado for hypertension and hyperthyroidism, but those conditions have been, and continue to be, stable with appropriate medication. Maldonado is treated by a cardiologist, but test results consistently indicate that Maldonado's condition is mild or non-critical. Several doctors conducted residual functional capacity assessments and reached conclusions less restrictive than the ALJ's step-four assessment. Nothing in the record indicates Maldonado cannot work at the capacity determined by the ALJ. The ALJ's determination that Maldonado is not disabled as defined by the Act is supported by substantial evidence. The ALJ's decision comports with relevant legal standards.

---

[92]*Id*. at p. 318.

[93]*Id*. at p. 57 (noting pes anserine bursitis—an inflammatory condition of the medial knee).

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I DENY Maldonado's request for relief (docket entry # 3) and AFFIRM the Commissioner's decision.

**SIGNED** on February 18, 2009.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE